# UNITED STATES BANKRUPTCY COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

IN RE:

CRISHNA AVIDASH PERSAUD,

    Debtor.
_____/

Case No.: 6:15-bk-10459-CCJ

Chapter 11

ARVIN MAHENDRU, as Chapter 7 Trustee for Crishna Avidash Persaud,

    Plaintiff,

v.

CRISHNA AVIDASH PERSAUD, individually, NIRVANA DEBBIE PERSAUD, individually, PREA KAGOLANU, individually, and MORRISON COHEN, LLP, a limited liability partnership,

    Defendants.
_____/

Adv. No.: 6:17-ap-00064-CCJ

## MORRISON COHEN LLP'S _AMENDED_[1] MOTION TO DISMISS COUNTS II AND III OF THE ADVERSARY COMPLAINT

### NOTICE OF OPPORTUNITY TO OBJECT AND REQUEST FOR HEARING

Pursuant to Local Rule 2002-4, the Court will consider the relief requested in this Motion without further notice or hearing unless a party in interest files a response within 14-days from the date set forth on the attached proof of service, plus an additional 3 days for service if any party was served by U.S. Mail.

If you object to the relief requested in this Motion, you must file a response with the Clerk of the United States Bankruptcy Court at 400 W. Washington Street, Orlando, Florida 32801, and serve a copy on the Movant's attorney, Seese, P.A., Attn: Michael D. Seese, Esq., 101 N.E. 3rd Avenue, Suite 410, Fort Lauderdale, Florida 33301, and any other appropriate persons within the time allowed. If you file and serve a response within the time permitted, the Court will either schedule

---

[1] An amended Motion is being filed solely for purposes of complying with the negative notice procedures of Local Rule 7001-1.

> and notify you of a hearing or consider the response and grant or deny the relief requested without a hearing.
>
> If you do not file a response within the time permitted, the Court will consider that you do not oppose the relief requested in the paper, will proceed to consider the paper without further notice or hearing, and may grant the relief requested.

Defendant, MORRISON COHEN LLP (the "**Firm**"), by and through its undersigned counsel, hereby files this *Motion to Dismiss Counts II and II of the Adversary Complaint* (the "**Motion**"), and respectfully requests that the Court dismiss, with prejudice, Counts II and III of the Adversary Complaint (the "**Complaint**") filed in the above-styled adversary proceeding (the "**Adversary Proceeding**").

In support of this Motion, the Firm states as follows:

## PRELIMINARY STATEMENT:

This adversary proceeding arises from a dispute between the Plaintiff, as representative of the Debtor's bankruptcy estate, and the Debtor and his family regarding what rights, if any, the Plaintiff has over litigation pending in New York, case styled, *Crishna Persaud et al. v. Bishen Harricharran et al.,* Index No 711630/2015, pending before the Supreme Court, State of New York, Queens County (the "**New York Litigation**"). The New York Litigation involves a dispute over the purchase of property located in New York, and the Debtor and his family contend that the Plaintiff has no interest in the New York Litigation because the Debtor's interest in the property was assigned, pre-petition, to the Debtor's sister.

When the Firm filed a motion in the New York Litigation on behalf of Debtor's sister seeking to intervene in the New York Litigation, the Plaintiff filed this action against the Firm

and others, contending that the motion in the New York Litigation violated the automatic stay.[2] The allegations of Count II of the Plaintiff's complaint against the Firm, even if accepted as true in the light most favorable to the Plaintiff, fail to state any claim against the Firm for several reasons.

First, the Plaintiff premises its claim against the Firm upon a number of communications between the Trustee and the Firm regarding the Plaintiff's allegation that the Firm had violated the stay in the New York Litigation. A law firm should not be liable for any potential violation of the automatic stay based upon the Firm's litigation position, again taken on behalf of its clients, in discussions with the Plaintiff over the applicability of the automatic stay itself. Such an argument, if accepted, could absolutely chill negotiations between parties in a bankruptcy case.

Second, it is a basic tenet of bankruptcy law that the automatic stay does not apply to civil actions initiated by, and not against, the Debtor. The Debtor initiated the New York Litigation and, therefore, the automatic stay does not apply.

Third, the property involved in the New York Litigation is <u>not</u> property of the estate within the meaning of 11 U.S.C. § 541(a), since any interest the Debtor had to acquire the property in question was assigned to his sister, Prea Kagolanu.

Finally, notwithstanding that the automatic stay does not apply to the New York Litigation, the Firm's actions and conduct do not rise anywhere near a level which would warrant the imposition of punitive damages. Therefore, Count II of the Adversary Complaint should be dismissed in its entirety.

---

[2] Immediately after the Trustee filed this complaint, the Firm informed the judge presiding over the New York Litigation that the New York Litigation should be stayed pending the outcome of the proceedings before this Court.

18682967  0906164

As to Count III of the Adversary Complaint, which seeks declaratory relief as to the ownership of the claims at issue in the New York Litigation, the Firm should not be a named a party to that claim. The Firm has no interest in the New York Litigation, and any declaratory judgment regarding the ownership of that action will not affect the Firm. Assuming the Plaintiff wins the ultimate declaratory judgment regarding ownership and control of the New York Litigation, the Plaintiff will simply substitute in as plaintiff and the Firm will be replaced as counsel. Declaratory relief here will not change the Firm's rights or responsibilities in any way, and naming the Firm as a party to Count III of the complaint affords no potential rights that the Plaintiff cannot obtain as against the other parties. Accordingly, the Firm is simply not necessary to the Plaintiff's claim for relief under Count III and, therefore, Count III of the Adversary Complaint against the Firm should be dismissed.

## LEGAL STANDARD:

1. In order to survive a motion to dismiss pursuant to Rule 12(b)(6), Fed.R.Civ.P., applicable to these proceedings pursuant to Rule 7012(b)(6), Fed.R.Bankr.P., the Adversary Complaint must allege facts that, if "accepted as true . . . state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plausibility determination is a "context specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* At 679. The court must be able "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. At 663.

2. "The Eleventh Circuit has endorsed 'a "two-pronged approach" . . . [a] eliminate any allegations in the complaint that are mere legal conclusions; and . . . [b] where there are well-pleaded factual allegations, "assume their veracity and then determine whether they

plausibly give rise to an entitlement to relief."'" *Clingman & Hanger Mgmt. Assocs., LLC v. Knobel*, No. 16-62028-CIV-Lenard/Goodman, 2017 S.D. Fla. LEXIS 65854, at *6 (S.D. Fla. April 28, 2017). The Eleventh Circuit has also held that, "[I]n evaluating the sufficiency of a plaintiff's pleadings, we make reasonable inferences in Plaintiff's favor, 'but we are not required to draw the plaintiff's inference.'" *Id.* (quoting *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1248 (11th Cir. 2005)).

3. Finally, "Florida courts have also made it abundantly clear that any affirmative defense . . . may be considering in resolving a motion to dismiss when 'the complaint affirmatively and clearly shows the conclusive applicability' of the defense to the bar of the action." *Jackson v. Bell South Telecommunications,* 372 F.3d 1250, 1277 (11th Cir. 2004) (quoting *Reisman v. Gen. Motors Corp.*, 845 F.2d 289, 291 (11th Cir. 1988)).

4. As discussed more fully in this Motion, a review of the allegations and exhibits incorporated into the Adversary Complaint and applicable law support a dismissal of Counts II and III against the Firm.

## LEGAL ARGUMENTS AND FACTS IN SUPPORT

I. **Count II Should Be Dismissed**

   A. **The Firm Is Not A Proper Party To Count II**

5. The Firm was retained by Debtor to represent his interests and the interests of Prea Kagolanu, who owned the right to purchase the property by virtue of an assignment executed by the Debtor pre-petition. The Plaintiff concedes that at all relevant times the Firm was acting as counsel to parties to the New York Action and the Plaintiff does not contend that the Firm had any direct interest in the New York Action.

18682967 0906164

6. Notwithstanding the Firm's status as counsel for the Debtor and other defendants, the Plaintiff seeks to hold the Firm independently liable for alleged breaches of the automatic stay. The Plaintiff points to the Firm's zealous litigation positions in discussing the New York Litigation with the Plaintiff. The Firm's litigation posture in discussions with the Plaintiff about the applicability and scope of the automatic stay in connection with the New York Litigation should not give rise to an independent claim against the Firm for a violation of the automatic stay. The Plaintiff's contention that the automatic stay can be violated by an attorney for having pointed discussions with a bankruptcy trustee over whether the stay even applies strains credulity. Holding a lawyer strictly liable for arguing its client's position that the stay does not apply would chill reasonable discussion between professionals about the applicability and scope of the automatic stay.

7. The Firm is required to advocate zealously for its clients, and that is what occurred. The Plaintiff was, of course, free to seek relief from this Court against the parties to the New York Litigation if the Plaintiff believed their position was in error, including, without limitation, by filing a suggestion of bankruptcy, which did not occur at any time prior to filing the Adversary Complaint. The fact that the Firm did not blindly accept the Plaintiff's litigation position with respect to the stay, does not mean that the Firm violated the stay.

**B. The Automatic Stay Does <u>Not</u> Apply Here As The New York Litigation is Actions By The Debtor**

8. Count II should also be dismissed because the New York Litigation is an action by the Debtor (not against the Debtor), and thus does not implicate the automatic stay.

9. In *Roberts v. Commissioner*, 175 F.3d 889 (11th Cir. 1999), the Eleventh Circuit, in considering whether a particular proceeding was "against a debtor", held that the action in question "was neither a proceeding 'against the debtor' nor a proceeding 'to recover a claim

against the debtor' within the meaning of section 362(a)(1)." *Id.* at 896.   In concluding that the action in question was not "against the debtor", the court held that the automatic stay did not apply. *See id.*

10.    Likewise in *Day-Petrano v. Rhodes (In re: Petrano)*, Adv. No. 13-01003-KKC, 2013 N.D. Fla. LEXIS 2793, at * 4 (Bankr. N.D. Fla. April 19, 2013), the bankruptcy court held that, "[b]ecause the District Court case is one filed by, and not against, the Debtors (the Plaintiffs here), the District Court's ruling that the automatic stay of 11 U.S.C. § 362(a) did not apply to that action was correct."); *see also Kent v. Worldwide Fin. Servs.,* No. 16-cv-12053, 2017 U.S. Dist. LEXIS 39357, at *7 (E.D. Mich. March 20, 2017) ("Likewise, § 362(a)(1) only effects an automatic stay as to judicial proceedings *against the debtor*.  Kent [debtor] initiated this action himself.  Because the case is not proceeding against him, § 362(a)(1) does not operate to stay the case."*)*; *Austin v. Taylor*, No. 15-cv-00162-JSC, 2016 U.S. Dist. LEXIS 14463, at *4 (N.D. Ca. February 4, 2016) ("As plaintiff notes, the automatic stay provision of 11 U.S.C. § 362 does not apply to civil proceedings brought by the debtor.").

11.    The Plaintiff concedes that the New York Litigation was commenced by the Debtor.  Consequently, the automatic stay does not apply to the New York Litigation, and the Firm cannot be held liable for any damages whatsoever under 11 U.S.C. §§ 105 or 362. [3]

### C.    No Property of the Estate Implicated

12.    Count II should also be dismissed because no property of the Debtor's bankruptcy estate is implicated, as the Debtor's interest had been assigned pre-petition.

13.    As alleged by the Plaintiff, on or about April 26, 2014, the Debtor entered into a *Purchase and Sale Contract For Residential Real Property* (the "**Contract**") with Bishen

---

[3] Again, no suggestion of bankruptcy was ever filed in the New York Litigation.

18682967 0906164

Harricharran (the "**Seller**"). *See Adversary Complaint,* p.3, ¶11. The Seller is the Debtor's first cousin. The Contract governs the purchase and sale of property located at 117-06 107th Avenue, Richmond Hill, New York 11419 (the "**Property**").

14. In accordance with the Contract, Paragraph 6(f) provides, in part, that, "This contract is fully transferrable." *See Adversary Complaint, Exhibit "A",* ¶6(f). Absent from Paragraph 6(f) of the Contract is any condition relating to the transferability of the Contract.

15. Furthermore, in accordance with Paragraph 7 of the Contract, the closing was to take place on or before May 1, 2016. *See Adversary Complaint, Exhibit "A",* ¶7. The Contract was executed by Seller and, therefore, the Seller agreed to the terms and conditions of the Contract, including, without limitation, Paragraphs 6(f) and 7.

16. Attached to the Adversary Complaint as Composite Exhibit "L" are, among other documents, an *Affidavit in Support of Motion to Intervene* (the "**Kagolanu Affidavit**") [4] sworn to and executed by Prea Kagolanu, the Debtor's sister ("**Ms. Kagolanu**"), in connection with a motion to intervene (the "**Motion to Intervene**") filed on her behalf in the New York Litigation on or about April 19, 2017. *See Adversary Complaint, Composite Exhibit "L".*

17. In the Kagolanu Affidavit, Ms. Kagolanu attests to the fact that she had entered into a *Lending and Purchase Agreement* (the "**Lending Agreement**") and *Assignment of Purchase and Sale Agreement* (the "**Assignment Agreement**") with the Debtor on or about April 23, 2014. In accordance with the Lending Agreement, Ms. Kagolanu agreed to (a) lend the Debtor funds sufficient to acquire the property under the Contract but take the place of buyer under the Contract, and (b) grant the Debtor an option to acquire the property from Ms.

---

[4] The Firm was not the original counsel of record in the New York Litigation. The Firm was substituted as counsel for the Plaintiffs in November, 2016. Accordingly, the Firm did not file the original complaint in the New York Litigation.

Kagolanu. In accordance with the Assignment Agreement, the Debtor assigned the Contract to Ms. Kagolanu. Copies of the Assignment Agreement and Lending Agreement are included as part of Composite Exhibit L to the Adversary Complaint.

18. The Assignment Agreement contemplates that the Debtor will enter a contract to acquire the Property. Specifically, Paragraph 4 of the Assignment Agreement provides, "Borrower shall enter into a Purchase and Sale Contract for the property known as 117-06 107[th] Avenue Richmond hill Queen NY 11419." *See Assignment Agreement,* ¶4.

19. Also attached to the Adversary Complaint as a part of Composite Exhibit L is the *Affidavit in Support of Motion to Intervene* (the "**Debtor Affidavit**") executed by the Debtor, in which the Debtor attests to facts which corroborate those contained in the Kagolanu Affidavit.

20. Despite the Lending Agreement and the Assignment Agreement, the Plaintiff asserts an interest in the Property and the New York Litigation. The Firm respectfully submits that the Plaintiff never had, and does not currently hold, any interest in the Property or the Contract based on the Lending Agreement and Assignment Agreement, as supported by the Debtor Affidavit and Kagolanu Affidavit.

21. Consequently, the Firm could not have violated the automatic stay, intentionally, willfully or otherwise, since neither the Property nor the Contract are property of the estate pursuant to 11 U.S.C. § 541(a).

**II.    No Viable Claim For Punitive Damages**

22. The Plaintiff is not entitled to punitive damages against the Firm and, to the extent Count II seeks punitive damages, it must be dismissed.

23. "'[P]unitive damages are awarded in response to particularly egregious conduct for both punitive and deterrent purposes. Such awards are "reserved . . . for cases in which the

defendant's conduct amounts to something more than a bare violation justifying compensatory damages or injunctive relief." To recover punitive damages, the defendant must have acted with actual knowledge that he was violating the federally protected right or with reckless disregard of whether he was doing so.'" *In re: WFF Acquisition,* LLC, 420 B.R. 902, 914 (Bankr. S.D. Fla. 2009) (quoting *In re Wagner,* 74 B.R. 898, 903-04 (Bankr. E.D. Pa. 1987, quoting *Cochetti v. Desmond,* 572 F.2d 102, 106 (3$^d$ Cir. 1978)).

24. Here, the Firm relied upon the Contract and the Assignment Agreement, as well as the Kagolanu Affidavit and Debtor Affidavit in support of the position that neither the Property nor the Contract are property of the estate. The Firm also relied on the fact that the New York Litigation was initiated by, and not against, the Debtor and, therefore, the automatic stay does not apply.

25. Accordingly, the Firm cannot be found to have engaged in a level of conduct necessary to support the imposition of punitive damages.

### III. Count III Should Be Dismissed

26. Count III of the Adversary Complaint should be dismissed because it seeks declaratory relief against the Firm on the substantive rights of the parties to the New York Litigation, in which the Firm has no interest.

27. In Count III of the Adversary Complaint, the Plaintiff seeks a determination that the Plaintiff should be the "true party in interest in the New York Litigation" and that the Plaintiff "has the exclusive right to pursue, settle, and control the Debtor's interest in the New York Litigation." *See Adversary Complaint*, p.18-19, ¶s 92 and 94.

28.     The Plaintiff further contends that the Motion to Intervene and the Affidavits were made and/or filed "without authorization from the Plaintiff" notwithstanding that Ms. Kagolanu – a non-debtor party - filed the Motion to Intervene.

29.     The Firm is not necessary to a resolution of Count III of the Adversary Complaint, as the Firm is not a party to the New York Litigation.  If the Plaintiff is the "true party in interest," this does not, and should not, prevent the Firm from continuing to represent Ms. Kagolanu in the New York Litigation, if necessary.  Likewise, even in the event the Plaintiff has authority to pursue, settle and control the Debtor's interest, if any, in the New York Litigation, this does not prevent the Firm from representing Ms. Kagolanu's interests in the New York Litigation, if necessary.

30.     Finally, the Firm respectfully submits that no authorization from the Plaintiff was required prior to the Firm filing the April 19 Filings.  First, the automatic stay did not apply since the New York Litigation was initiated by the Debtor.  Second, even if the Plaintiff is the true party in interest, there is nothing which would preclude the Firm from obtaining an affidavit from the Debtor or from filing the April 19 Filings on behalf of Ms. Kagolanu.

31.     Accordingly, Count III of the Adversary Complaint, as it relates to the Firm, should be dismissed.

## CONCLUSION:

32.     Based on the foregoing, Counts II and III of the Adversary Complaint against the Firm should be dismissed.

33.     The automatic stay simply does not apply in the New York Litigation.  The New York Litigation was commenced by, and not against, the Debtor.

18682967 0906164

34.     Additionally, neither the Property nor the Contract are property of the estate and, therefore, the automatic stay would not apply based on the Contract and Assignment Agreement.

35.     Notwithstanding that the Plaintiff is not entitled to any damages, since the automatic stay did not operate to stay the New York Litigation, in reliance upon the Contract and Assignment Agreement, as supported by the April 19 Filings, the conduct of the Firm did not rise to any level which would warrant the imposition of punitive damages.

36.     Finally, if, for whatever reason, the Plaintiff is deemed to be the "true party in interest" (as opposed to the Debtor) in the New York Litigation, the Firm may still represent the interests of Ms. Kagolanu, and the Plaintiff cannot resolve or settle the interests of Ms. Kagolanu in the New York Litigation.

18682967  0906164

**WHEREFORE,** Morrison Cohen LLP respectfully requests that the Court grant this Motion and enter an order dismissing Counts II and III of the Adversary Complaint against Morrison Cohen LLP, as well as granting any other and further relief that the Court may deem just and proper.

Respectfully submitted by,

/s/ Michael D. Seese
MICHAEL D. SEESE, ESQ.
Florida Bar No. 997323
Seese, P.A.
101 NE 3rd Avenue, Suite 410
Ft. Lauderdale, FL 33301
Telephone: 954-745-5897
mseese@seeselaw.com

Counsel for Morrison Cohen LLP

18682967  0906164

## PROOF OF SERVICE

I HEREBY CERTIFY that on May 13, 2017, a copy of the foregoing *amended* Motion[5] was served via CM/ECF upon the following parties on May 13, 2017:

Arvind Mahendru, Trustee, c/o Ryan E. Davis (rdavis@whww.com, thiggens@whww.com, thiggens@ecf.courtdrive.com)

Prea Kagolanu, c/o A. Clifton Black (cblack@cliftonblack.com, janet@cliftonblack.com, nikki@cliftonblack.com)

Nirvana Debbie Persaud, c/o A. Clifton Black (cblack@cliftonblack.com, janet@cliftonblack.com, nikki@cliftonblack.com)

Crishna Avidash, c/o A. Clifton Black (cblack@cliftonblack.com, janet@cliftonblack.com, nikki@cliftonblack.com)

/s/ *Michael D. Seese*
Michael D. Seese, Esq.

---

[5] The original Motion was also furnished via CM/ECF on the same parties on May 12, 2017.